UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| WESTFIELD INSURANCE COMPANY, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 2:15-CV-247 |
| RAINEY CONTRACTING, LLC, *et al.*, ) | |
|     Defendants, ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court to address plaintiff Westfield Insurance Company's ("Westfield") motion for summary judgment, [Doc. 110]. Defendants Seth Kincaid and Skin, LLC ("Kincaid defendants") responded, [Doc. 121], to which Westfield replied, [Doc. 127]. *Pro se* defendants Rainey Contracting, LLC and Rainey, LLC failed to respond to the plaintiff's motion. According to the Local Rules, "failure to respond to a motion may be deemed a waiver of any opposition to the relief sought." E.D. Tenn. L.R. 7.2. The matter is ripe for review.

I. **Background**

Westfield is a surety bond company that issued two performance and payment bonds on behalf of Rainey Contracting, LLC for the construction of two projects in eastern Tennessee, the Senior Center and Northeast State Community College ("NSCC"). In connection to the issuance of the bonds, the interested parties signed an indemnity agreement agreeing to indemnify Westfield for losses related to a breach of the bonds by Rainey Contracting, LLC. On July 24, 2013, defendants Skin, LLC, Rainey Contracting, LLC, and Rainey, LLC signed the indemnity

1

agreement. Seth Kincaid signed as managing member of Skin, LLC and on behalf of Rainey Contracting, LLC. Skin, LLC is a member of Rainey Contracting, LLC. Defendant Scott Rainey signed as managing member of Rainey, LLC and on behalf of Rainey Contracting, LLC. Rainey, LLC is a member of Rainey Contracting, LLC.

The indemnity agreement required the defendants to exonerate and indemnify Westfield against liability and any losses actually incurred by Westfield because of a breach by Rainey Contracting, LLC in performance of the construction projects. The agreement requires the defendants to prevent Westfield from sustaining any liability from losses in the first place and to reimburse Westfield for any losses it actually sustains.

> The Indemnitors shall exonerate and indemnify the Surety from and against any and all liability for losses and/or expenses of whatever kind (including, but not limited to, interest, court costs, and counsel fees) and from and against any and all such losses and/or expenses which the surety may sustain; (1) by reason of having executed or procured the execution of the Bonds; (2) by reason of the failure of the indemnitors to perform or comply with the covenants and conditions of this Agreement; or (3) in enforcing any of the covenants and conditions of this agreement. . . . In the event of any payment by the Surety, . . . the Surety shall be entitled to charge for any disbursement made by it regarding the matters herein contemplated under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

[Indemnity Agreement, Doc. 112-1 at 1].

The Kincaid defendants do not dispute that they executed the indemnity agreement or that Westfield made payments to subcontractors pursuant to the bonds. According to Westfield, following Rainey Contracting, LLC's failure to perform on both projects, Westfield retained Landmark Corporation ("Landmark") to provide construction-consulting services and Landmard

2

eventually took possession of and completed the two projects. [Truman Affidavit, Doc. 113 ¶¶ 5-6]. On the two projects that Westfield issued surety bonds for Rainey Contracting, LLC, Westfield has sustained actual losses of $1,539,201.51 in payments to subcontractors and vendors in order to complete the two construction projects on Rainey Contracting, LLC's behalf. [*Id.* at ¶ 7]. Westfield further avers that it sustained additional losses in the amount of $96,873.67 by reason of having to execute the bonds and enforcing the bonds. [*Id.* at ¶ 8]. Westfield submits, through the affidavit of Kathryn Truman, a total loss of $2,543,977.10. [*Id.* at 9]. An amount of $876,190.76 was recouped under the two bonds. [*Id.* at 11]. Westfield expects an additional $100,244.13 will be recouped as well. [*Id.*]. Westfield submits evidence that its net loss totals $1,567,542.21 by reason of having executed the bonds, the defendants' failure to perform under the contracts and indemnity agreements, and/or in enforcing the indemnity agreements. [*Id.* at 12].

## II. Standard of Review

Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is merely colorable, or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

### III. Analysis

Westfield moves this Court for summary judgment in its favor arguing that there are no material issues of fact relating to the defendants' breach of the indemnity agreement or the

amounted owed to Westfield to recover under that agreement. The Kincaid defendants make two arguments in opposition to summary judgment relating to the indemnity agreements and the amount Westfield is seeking in damages. First, the Kincaid defendants argue that a dispute of material fact exists as to the amount of damages by arguing that one payment made to a subcontractor was not related to work on either project and that Westfield failed to mitigate damages. Second, the Kincaid defendants argue that their liability should be limited given their limited involvement in the performance of the construction projects that led to Westfield's payments under the bonds.

Under Tennessee law, indemnity agreements are to be specifically enforced. *See Hardeman v. Cnty. Bank v. Stallings*, 917 S.W.2d 695, 699 (Tenn. Ct. App. 1995). The Kincaid defendants do not contest that they executed the indemnity agreement relating to the issuance of performance bonds for the Senior Center or NSCC projects. [Doc. 122 at 2]. It appears that the Kincaid defendants do not contest the validity or enforceability of the indemnity agreement generally as they make only two limited arguments against granting summary judgment to Westfield. [Doc. 122 at 2]. Because the validity of the indemnity agreement in general is not contested, the Court will not address that issue. Instead, the Kincaid defendants take issue with the amount of damages that that should be awarded against them on summary judgment by contesting a single payment and arguing that damages should be limited against them as mere investors and not hands-on managers of the projects.

### a. F&J Drywall Payment

The Kincaid defendants' first argument opposing summary judgment in favor of Westfield is that they dispute the amount of damages claimed by Westfield, specifically a $125,802.00 payment to F&J Drywall. No other payment made pursuant to either bond has been

contested in the Kincaid defendants' response. The payment of $125,802.00 is actually the sum of two payments according to the plaintiff. [Truman Affidavit, Doc. 113 ¶ 7]. Westfield paid $42,271.50 on August 13, 2015, for work performed on the NSCC project and then paid another $83,350.50 on October 12, 2015, for work performed on the Senior Center. [*Id.*].

The Kincaid defendants dispute this payment because "there was never any documentation in the accounting records of Rainey Contracting, LLC which demonstrated a subcontract existed between Rainey Contracting, LLC and F&J Drywall." [Doc. 122 at 6]. According to Seth Kincaid's affidavit, he was unable to locate a subcontract between Rainey Contracting, LLC and F&J Drywall, and that it is his "belief that any hours [F&J Drywall] worked were merely converted into a subcontract for the purposes of collecting excessive payments . . . ." [Kincaid Affidavit, Doc. 124 ¶ 18].

The Kincaid defendants argue that a dispute of material fact exists because it contends the F&J Drywall payment was improper and not for work performed pursuant to the bond, or therefore subject to indemnity contract. The Kincaid defendants cite a few Tennessee Court of Appeals cases wherein a trial court was reversed when it granted summary judgment despite a dispute in the amount of damages owed. *See Hardin Int'l, Inc. v. KSI Real Estate Enters., Inc., et al.*, 1989 WL 2457, at *2 (Tenn. Ct. App. Jan. 17, 1989); *Farnsworth v. Faulkner*, No. W2000-02031-COA-R3-CV, 2001 WL 892917, at *4 (Tenn. Ct. App. Aug. 2, 2001).

In *Hardin*, the appellate court held that the defendant had raised a genuine issue of material fact where it submitted an affidavit contesting the total amount of damages on a contract that showed a "significant difference in the amount of damages set forth by the parties." *Hardin*, 1989 WL 2457, at * 2. In *Farnsworth*, the defendant leased property from the plaintiff and agreed in the leasing contract that it would be responsible for repairs to the property.

*Farnsworth*, 2001 WL 892917, at 4. The appellate court held summary judgment was improper where the defendant submitted testimony from the property manager that some of the repairs charged to the defendant were not necessary to restore the building to its original condition. *Id.* Seth Kincaid has submitted an affidavit contesting the payment to F&J Drywall, which he contends defeats summary judgment on any payments made by Westfield pursuant to the bonds.

However, these cases are easily distinguishable from the facts here. Unlike the contracts in the cases cited above and in the defendants' brief, the parties' indemnity contract explicitly requires indemnification for any payments made by Westfield "under the belief" that such payments were due pursuant to the performance bonds, whether or not Westfield was actually liable for that payment. [Doc. 112-1 at 1].

> In the event of any payment by the Surety, . . . the Surety shall be entitled to charge for any disbursement made by it regarding the matters herein contemplated under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

*Id.* Tennessee contract law provides that where the language of the contract is "plain and unambiguous," it is the function of the court to interpret the written contract according to its plain terms. *Petty v. Sloan,* 277 S.W.2d 355, 358 (Tenn.1955). Where the contract language is "is plain, simple and unambiguous and this being true 'it is the function of a court to interpret and enforce contracts as they are written, notwithstanding they may contain terms which may be thought harsh and unjust. A court is not at liberty to make a new contract for parties who have spoken for themselves.'" *Id.* at 358-59 (quoting *Smithart v. John Hancock Mutual Life Ins. Co.*, 71 S.W.2d 1059, 1063 (Tenn. 1934)).

The Kincaid defendants have not argued that the indemnity contract is in any way ambiguous or that the terms of the contract were not manifestations of their intentions. The provision providing that the indemnitors shall reimburse for payments made by Westfield under the belief they were due pursuant to the performance bonds is plain, unambiguous, and simple. The parties agreed that where Westfield believed that payments were due or necessary under the bonds, the indemnitors would reimburse for those payments regardless of the underlying liability. The Kincaid defendants have presented no argument as to why this provision should not be enforced according to its plain terms. Westfield, through Kathryn Truman's affidavit, submits that the payments were made under the "belief that it was liable for the payments under the Bonds." [Truman Supplemental Affidavit, Doc. 128 ¶ 4]. Westfield also submits that it believed it owed the F&J Drywall payments based upon "(a) Rainey Contracting's confirmation that F&J Drywall was a subcontractor under each of the Bonded Contracts, (b) Rainey Contracting's confirmation that F&J Drywall's claims against the Bonds related to the amounts owed under those subcontracts, and (c) Westfield's independent investigation/assessment of the validity of F&J Drywall's claims . . . ." [*Id.* ¶ 7].

Kincaid contests the payment made to F&J Drywall based on his belief that any work done by F&J Drywall was not performed on the Senior Center or the NSCC project, and therefore should not have been paid by Westfield. However, his beliefs regarding payment liability under the bonds does not alter his liability under the plain language of the indemnity contract. Kincaid's affidavit contesting the amount of damages does not defeat summary judgment because even if he is correct that Westfield is not liable for the F&J Drywall payment under the performance bonds, the indemnity contract provides that the indemnitors will reimburse for payments made "under the belief" that liability existed. Kincaid's affidavit does

not raise a genuine issue of material fact as to Westfield's *belief* that it owed F&J Drywall $125,802.00.

b. **Failure to Mitigate Damages**

The second argument the Kincaid defendants make in opposition to summary judgment is that Westfield failed to mitigate its damages after it took over the performance and completed construction of the Senior Center and NSCC project. The Kincaid defendants argue that Westfield failed to mitigate its damages, *i.e.* the amounts paid to Landmark to take over construction of the Senior Center and NSCC projects, because Westfield "did not consult with the Kincaid Defendants before hiring Landmark even though the Kincaid Defendants were the only indemnitors with the financial wherewithal to even remotely be in a position to satisfy a default in relation to the projects." [Doc. 122 at 8]. The Kincaid defendants further argue that "it is unknown" whether Westfield obtained estimates from other companies or contractors to complete the project before hiring Landmark. [*Id.*]. Finally, the Kincaid defendants argue that Westfield failed to act reasonably or in good faith before the issuance of either of the performance bonds because the financial disclosures given by all indemnitors showed that no indemnitor, jointly or individually, had sufficient collateral to cover the amounts of the surety bonds. [*Id.*].

The failure to mitigate damages is an affirmative defense and the defendant carries the burden to produce evidence of such a failure. *Action Ads, Inc. v. William B. Tanner Co., Ind.*, 592 S.W.2d 572, 575 (Tenn. Ct. App. 1979).

> The critical factor in determining fulfillment of a plaintiff's duty to mitigate is whether the method which he employed to avoid consequential injury was reasonable under the circumstances existing at the time. The rule with respect to the mitigation of damages may not be invoked by a contract breaker as a basis for hypercritical examination of the conduct of the injured party, or

> merely for the purpose of showing that the injured person might have taken steps which seemed wiser or would have been more advantageous to the defaulter.

*Action Ads, Inc. v. William B. Tanner Co.*, 592 S.W.2d 572, 575 (Tenn. Ct. App. 1979) (quoting *Tampa Electric Co. v. Nashville Coal Company*, 214 F. Supp. 647, 652 (M.D.Tenn. 1963)) (internal quotation omitted).

The defendants have produced no evidence to support this defense in their opposition to summary judgment. Instead, the Kincaid defendants merely argue in their brief that they should have been consulted before the hiring of Landmark and that "it is unknown" if other contractors were asked for bids on the construction projects. The defendant has brought forth no admissible evidence that either construction project could have been completed at a lower cost. Furthermore, the Court is unclear how "consulting" with the Kincaid defendants before hiring Landmark would mitigate damages in this matter. The indemnitors agreed that in the event Rainey Contracting, LLC breached the performance bond agreement that Westfield would have the option, in its sole discretion, to take possession of the work and complete the construction work at the expense of the indemnitors. [Doc. 122-1 at 3]. The parties have pointed to no, and the Court can find no, obligation for Westfield to "consult" with the Kincaid defendants before taking over the construction performance after Rainey Contracting, LLC had breached the performance bond requirements.

The Kincaid defendants have failed to raise a genuine issue of material fact as to Westfield's alleged failure to mitigate damages. Merely arguing in a brief that "it is difficult to ascertain how the Plaintiff properly mitigated its damages" is simply relying on allegations without producing any evidence that the damages could have been mitigated. Regarding Westfield's alleged "bad faith" of issuing performance bonds it allegedly knew the indemnitors

could not cover, the defendants have presented no legal authority that enforcing the plain terms of the indemnity agreement constitutes bad faith by Westfield or is a defense to enforcement of the contract. The defendants have failed to present any admissible evidence that Westfield failed to mitigate its damages or acted in "bad faith."

### c. Kincaid Defendants' liability and involvement

In their last argument against granting summary judgment, the Kincaid defendants argue that their liability under the indemnity contract should be limited because Seth Kincaid, the sole member of Skin, LLC, was not involved in the day-to-day operations of Rainey Contracting, LLC during the time of the construction projects. Kincaid states that he was merely an investor in Rainey Contracting, LLC at the time the bonds and indemnity contract were executed and stepped into the role of Chief Financial Officer in April of 2015 "in an attempt to salvage the business." [Kincaid Affidavit, Doc. 124 ¶ 17]. The defendants have presented no case law that supports their argument to limit liability under an indemnity contract to the indemnitor's personal involvement. Seth Kincaid signed the indemnity agreement as the managing member of Skin, LLC, obligating the Kincaid defendants to indemnify Westfield if necessary. The indemnity agreement does not limit liability under the contract to personal involvement in the construction contract. The fact that Seth Kincaid and Skin, LLC were not actually working on the construction sites does not negate their promise to indemnity Westfield in the event that Rainey Contracting, LLC breached the performance bonds. This argument, without legal support, is insufficient to defeat summary judgment.

### IV. Conclusion

For the reasons stated above, the plaintiff's motion for summary judgment, [Doc. 110], is GRANTED. Judgment against the Kincaid defendants, Rainey Contracting, LLC, and Rainey,

LLC in the amount of $1,567,542.21 shall be entered separately. The jury trial set on July 11, 2017 is hereby CANCELLED.

This matter was originally also brought against *pro se* defendants Scott T. Rainey and Stephanie I. Rainey. Defendants Seth Kincaid and Skin, LLC also alleged a cross-claim against Scott T. Rainey. The plaintiff informed the Court in its motion for summary judgment that these individual defendants have petitioned for bankruptcy in the United States Bankruptcy Court for the Eastern District of Tennessee, case number 2:16-BK-51621. The motion further states that the plaintiff no longer seeks relief from these individual defendants. Accordingly, this action, including the cross-claim, against these individual defendants is subject to an automatic stay as provided by 11 U.S.C. § 362 and pursuant to the policies and procedures of the Administrative Office of the United States Courts. Therefore, it is hereby ORDERED that the action against Defendants Scott T. Rainey and Stephanie I. Rainey only is closed and removed from the active docket of this Court as a statistically pending matter. In addition, all pending motions as to them shall be terminated and are subject to being refiled if and when appropriate. However, nothing contained in this order shall be considered a dismissal or disposition of this matter as to them. Should further proceedings become necessary or desirable, any party may initiate in the same manner as if this order had not been entered. The Clerk is directed to submit a JS-6 report to the Administrative Office of the U.S. Courts on this case. However, nothing contained in this order shall be considered a dismissal or disposition of this matter. Should further proceedings become necessary or desirable, any party may initiate in the same manner as if this order had not been entered. The Clerk is DIRECTED to mail a copy of this order and the accompanying judgment to the last known addresses of defendants Scott T. Rainey, Stephanie I. Rainey, Rainey Contracting, LLC, and Rainey, LLC.

So ordered.

ENTER:

                                                           s/J. RONNIE GREER  
                                      UNITED STATES DISTRICT JUDGE